UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

———————————————————————

DAVID SAHADEO,

Petitioner,

– against –

MICHAEL KIRKPATRICK,

**MEMORANDUM & ORDER**

Respondent.

18-CV-4094 (ERK)

———————————————————————

KORMAN, *J.*:

On May 12, 2011, five-year-old S.S. stayed home from school. Reann Test. 124; S.S.

Test. 99.[1] S.S. and her parents lived in the basement of a home that also housed many of S.S.'s

father's siblings and their families, including petitioner. Sattie Test. 41-42**.** S.S.'s aunt Sattie

babysat her while her parents went to work. *Id.* at 44-45, 54. Around 10 a.m., Sattie allowed S.S.

to watch television in the basement. *Id.* at 45. There, petitioner asked S.S. to play a game. S.S.

Test. 100. As part of the game, petitioner directed S.S. to remove her clothing and lay on her

---

[1] The transcripts of the suppression hearing, trial, and other proceedings are located at ECF Nos. 1-1, 1-2, and 1-3. The suppression hearing transcript appears in ECF No. 1-1 at pages 1-63. The trial transcript ("Trial Tr.") begins at page 118 of ECF No. 1-1 and continues through the end of ECF No. 1-3. Sattie Sahadeo's testimony ("Sattie Test.") appears at pages 155-185. S.S.'s testimony ("S.S. Test.") appears at 210-231 of ECF No. 1-1. Reann Sahadeo's ("Reann Test.") testimony begins on page 236 of ECF No. 1-1 and ends on page 12 of ECF No. 1-2. Detective Cecilia Papaleo's testimony ("Papaleo Tr. Test.") appears at 23-53, Jamie Hoffman-Rosenfeld's testimony ("Rosenfeld Test.") appears at 56-86, and Michael McCasland's testimony ("McCasland Test.") appears at 225-255 of ECF No. 1-2. The defense summation ("Def. Summation") appears at 23-29 of ECF No. 1-3. Unless otherwise indicated, page numbers in this opinion refer to the pagination of the original document, not the ECF version.

parents' bed. *Id.* at 100-01. He then removed his own clothes, climbed on top of her, inserted his penis into her vagina, and ejaculated ("goo," as S.S. referred to it on the stand) on her mons pubis. *Id.* at 101-04.

Before S.S. had a chance to shower, Sattie came downstairs to the basement looking for her. Sattie Test. 45. Sattie found S.S. standing next to the bathroom door stark naked. *Id.* at 163. She also found petitioner on the couch without a shirt. *Id.* When asked where her clothes were and why she took them off, S.S. answered that petitioner told her to take them off, put "slime" (the term S.S. used on the day of the incident) on her, and wiped it off with her "Dora [the Explorer] towel." *Id.* at 47.

Soon after Sattie took S.S. upstairs, S.S.'s mother, Reann, returned to the house with a surprise for her daughter: lunch from Burger King. Reann Test. 124, 125. Petitioner was leaving the house when Reann entered. *Id.* at 125. S.S. greeted her mother: "Guess what . . . Uncle David wanted to play a game and he tell me to take off my clothes and he take off his clothes . . . ." and explained everything that happened. *Id.* at 126; S.S. Test. 105. Reann, shocked and distraught, called her husband and then the police. Reann Test. 127. An ambulance arrived and transported S.S. and Reann to Queens Hospital. *Id.* at 127. Around 1:30 p.m., Detective Cecilia Papaleo met S.S. and Reann at the hospital, interviewed them, and escorted them to the Queens Child Advocacy Center, an integrative facility where "joint interviews between the police department, ACS [Administration for Children's Services], and the DA," as well as medical examinations, take place. Papaleo Supp. Test. 14-15; Reann Test. 139. At the Child Advocacy Center, Dr. Jamie Hoffman-Rosenfeld, a pediatrician specializing in sexual abuse, Rosenfeld Test. 189, examined S.S. and swabbed her, and collected her clothes. Reann Test. 128-29. While Dr. Hoffman-Rosenfeld observed "no sign of [physical] injury" to S.S.'s genitalia, he testified that

this is not inconsistent with penetration. Rosenfeld Test. 203-204 ("[I]n most instances of child sexual abuse, the examination is normal.").

After meeting S.S. and her mother at the Child Advocacy Center, Detective Papaleo went to the shared family home to arrest petitioner. Papaleo Tr. Test. 159-60. S.S.'s father, as well as another one of S.S's uncles and two aunts granted her entry. Papaleo Supp. Test. 21. One of the sisters led Detective Papaleo and her partner up the stairs to the attic "computer room"/ "living room" where petitioner slept. Papaleo Supp. Test. 34-36; Sattie Test. 51. Detective Papaleo entered the room to confront petitioner, who was sitting on his bed. Papaleo Supp. Test. 21. Afraid that petitioner might "lose his mind" because he appeared to be "extremely intoxicated," Detective Papaleo did not arrest petitioner but rather told him that there was an investigation with which she needed help and asked him to come with her to her office at the Child Advocacy Center. Papaleo Supp. Test. 22. Once at the Center, Detective Papaleo informed petitioner that he was under arrest. Papaleo Supp. Test. 24. When he questioned why he was being arrested, she told him it was for sexually abusing his niece. *Id.* Petitioner responded by exclaiming that S.S.'s father, not he, was the offender. *Id.* Again asserting his innocence and implicating his brother, petitioner verbally agreed to have his cheek swabbed, and Detective Papaleo quickly swabbed him. *Id.* at 25-27. After the swab was collected, Detective Papaleo presented petitioner with a consent form, which he refused to sign. *Id.* at 39-40. Office of Chief Medical Examiner ("OCME") analysts compared the samples taken from S.S.'s rape kit with the petitioner's buccal swab and reported a match. McCasland Test. 251.

At trial, defense counsel did not deny sexual contact but focused questions on cross examination and argument on the non-occurrence of penetration. *See, e.g.*, Def. Summation 306-309; S.S. Test. 111-14; Reann Test. 141-143; Rosenfeld Test. 212-13. Petitioner declined to take

the stand in his own defense. Trial Tr. 223-24. At the completion of trial, the jury convicted

petitioner on all counts. He was sentenced principally to 25 years to life for Predatory Sexual

Assault Against a Child (Penal Law § 130.96). Sentencing Tr., ECF No. 1-4, at 8-9. The

Appellate Division affirmed. *People v. Sahadeo*, 34 N.Y.S.3d 139, 140 (App. Div. 2016), *lv.*

*denied*, 28 N.Y.3d 936 (2016).

Petitioner then filed a motion for post-conviction relief pursuant to New York Criminal

Procedure Law § 440.10, alleging that he had ineffective assistance of counsel at trial, which was

denied without a hearing. *People v. Sahadeo*, Ind. No. 01609-2011, Slip. Op. (Supreme Court,

Queens Cty. Dec. 15, 2017), ECF No. 1-7. Petitioner now seeks habeas relief on three grounds:

First, petitioner's Fourth Amendment rights were violated when law enforcement made a

warrantless and nonconsensual entry into petitioner's home in order to arrest him. Am. Pet. Writ

Habeas Corpus, ECF No. 2 ("Fed. Habeas Pet."), at 10-13. Second, his Fourth Amendment rights

were violated because his intoxication prevented him from voluntarily consenting to a buccal

swab. Fed. Habeas Pet. 13-15. Third, the State Court's summary denial of petitioner's ineffective

assistance of counsel claim without an evidentiary hearing violated his right to due process. Fed.

Habeas Pet. 15-28.

**DISCUSSION**

## I. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act allows a federal court to grant habeas

relief to a prisoner convicted under state law when the state court's decision "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

"[C]learly established Federal law, as determined by the Supreme Court of the United States"

must involve a holding, rather than dicta, that gives a "clear answer to the question presented."

*Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam). In determining what constitutes an

"unreasonable application of[] clearly established Federal law," a federal habeas court "should

ask whether the state court's application of clearly established federal law was objectively

unreasonable." *Williams v. Taylor,* 529 U.S. 362, 409 (2000). In other words, a state prisoner

must demonstrate that the state court's decision was "so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is a "highly deferential

standard," requiring that state courts "be given the benefit of the doubt." *Renico v. Lett*, 559 U.S.

766, 773 (2010) (internal quotation marks omitted).

## II.     *Fourth Amendment Claims*

Petitioner argues that the Appellate Division's rejection of his two Fourth Amendment

claims are contrary to clearly established federal law and warrant habeas relief. First, he claims a

*Payton* violation, arguing that the shared family home consisted of "three distinct living spaces

for separate parts of the family unit," that the "attic area [was] the functional equivalent of his

'home' for purposes of the Fourth Amendment," and that police entering petitioner's attic room

and instructing him to come with them for an investigation was functionally an arrest. Fed.

Habeas Pet. 10-12 (citing *Payton v. New York*, 445 U.S. 573 (1980); *Simon v. City of New York*,

893 F.3d 83, 100 (2d Cir. 2018)). Second, petitioner argues that under the "totality of the

circumstances," his intoxication and the fact that Detective Papaleo waited until after the swab

was taken to present him with a consent form (which he refused to sign) necessarily indicate that

he did not voluntarily consent to a buccal swab and that his Fourth Amendment rights were

violated. Fed. Habeas Pet. 13 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 US 465, 494 (1976). Habeas review of a Fourth Amendment claim is available only if "the state has provided *no corrective procedures* at all to redress the alleged fourth amendment violations; or . . . if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an *unconscionable breakdown* in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) (en banc)) (emphasis added).

Petitioner's Fourth Amendment claims meet neither of these exceptions. New York provides corrective procedures to redress Fourth Amendment violations through suppression hearings. *See* N.Y. Crim. Proc. Law §§ 710.20-710.70. These procedures are facially adequate. *Capellan*, 975 F.2d at 70 n.1; *Gates*, 568 F.2d at 837 & n.4. Indeed, here petitioner utilized these opportunities to raise his Fourth Amendment claims in a pre-trial motion, as well as on appeal from conviction to the Appellate Division. The trial court ruled on the merits against petitioner's motion to suppress evidence after a hearing with live witnesses. Suppression Hearing Tr., ECF No. 1-1, at 1-62. The Appellate Division also rejected his claim on the merits, holding that probable cause to arrest petitioner existed after a known person identified him as the offender, that no arrest warrant was required because "police were invited into the home shared by the defendant, the complainant, and the complainant's parents without any threats or coercion," and that petitioner's consent to the buccal swab was voluntary and not negated by intoxication. *People v. Sahadeo*, 34 N.Y.S.3d 139, 140-41 (App. Div. 2016). Consequently, it cannot be said that the state courts "failed to conduct a reasoned method of inquiry into relevant questions of

fact and law" and thus created an "unconscionable breakdown" of the process. *See Capellan*, 975 F.2d at 71 (quotation marks omitted). Thus, as the Supreme Court held in *Stone v. Powell*, his Fourth Amendment claims cannot provide a basis for habeas corpus relief. *Stone*, 428 U.S. at 494-95.

Even if habeas relief were available for Fourth Amendment claims, petitioner's claims are meritless. First, even if the police illegally entered the house to confront petitioner, his later statements to Detective Papaleo asserting his innocence and communicating his agreement to the buccal swab are not suppressible. Assuming there was probable cause to arrest, a warrantless home arrest would not cause subsequent post-arrest statements made outside the home to be subject to the exclusionary rule. *New York v. Harris*, 495 US 14, 16-17 (1990). Second, petitioner challenges the lawfulness of the buccal swab. The testimony at the suppression hearing relevant to this issue was as follows: "When [petitioner] said it wasn't me[,] [h]e said to me you can get stuff from my mouth," after which Detective Papaleo swabbed petitioner immediately. Papaleo Supp. Test. 26. The Appellate Division rejected petitioner's "contention that his consent to the swab was negated by his intoxication at the time he volunteered to have the swab taken." *Sahadeo*, 34 N.Y.S.3d at 141. This holding was reasonable because petitioner volunteered to have his DNA taken, *see Schneckloth*, 412 U.S. at 219, and had the presence of mind to refuse to sign the consent form.

### III. Ineffective Assistance of Counsel Claim

Petitioner also claims that he was denied effective assistance of counsel from his trial lawyer, Jason Russo. Fed. Habeas Pet. 26-28. Petitioner based his claim on allegations that Russo failed to visit him or otherwise communicate with him while in jail, provide him with discovery or review it with him, discuss trial strategy with him or involve him in preparation of

his defense, and engage in a meaningful discussion with him about a defendant's right to testify at trial. *Id*. The trial judge denied petitioner's claim. *See Sahadeo*, Ind. No. 01609-2011, ECF No. 1-7. Petitioner claims that the trial judge's findings that his trial counsel was effective violated his Sixth Amendment right to counsel and was contrary to clearly established federal law set forth by *Strickland v. Washington*, 466 U.S. 668 (1984), because he was "left in the dark about what defense his lawyer was preparing and what evidence the State was going to use against him." Fed. Habeas Pet. 27.

"The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks and citations omitted). Consequently, the question posed to a habeas court "is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Significantly, counsel has an affirmative duty to "consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688. This obligation to consult on important decisions, however, "does not require counsel to obtain the defendant's consent to 'every tactical decision.'" *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Taylor v. Illinois*, 484 U.S. 400, 417-418 (1988)). The trial record indicates that petitioner's trial counsel met this standard. On the record, Russo explained to the trial judge that he did not object to prior inconsistent statements because of a "strategy" that he had discussed with petitioner and of which petitioner was "fully aware." Trial Tr. 222-23. Russo also told the trial judge that he and petitioner had "numerous conversations . . . for more than a year now, regarding plea negotiations while the case has been going on" and that after thorough discussions and ascertaining that petitioner was

"fully advised of . . . . [the] consequences of any plea . . . or conviction," petitioner "indicated to [Russo] he wanted to proceed with the trial." Pre-Trial Proceedings Tr., ECF No. 1-1, at 102-104. Specifically, Russo told the judge that "[t]he [first] offer that was conveyed . . . was 23 years. Thereafter, the offers were . . . 18 or 17 years. The latest offers . . . to plea to the rape first degree, nine years. [And] I had a chance to thoroughly discuss that offer with my client." *Id.* at 28. After trial, and as a result of rejecting the final plea offer his attorney managed to obtain, petitioner was sentenced to 25 years to life. Sentencing Tr. 8-9.

Similarly without merit is petitioner's claim that he did not receive sufficient advice about whether or not to testify – claiming that Russo only told him that testifying would "open Pandora's box" and allow him to "get buried," without further elaboration. Fed. Habeas Pet. 28. "The decision whether a defendant should testify at trial is for the defendant to make," and "trial counsel's duty of effective assistance includes the responsibility to advise the defendant concerning the exercise of this constitutional right." *Brown v. Artuz*, 124 F.3d 73, 74 (2d Cir. 1997). The trial judge was correct that the the trial record fails to support petitioner's assertions that Russo's advice violated these standards. Critically, Russo told the trial judge that he had "conferred with Mr. Sahadeo, with family members . . . . And at this time, my client has told me that he does not wish to avail himself of testifying." Trial Tr. 223. Petitioner then confirmed that he was not going to testify because his lawyer told him that it was "in [his] best interest that [he] shouldn't testify," and petitioner agreed with this advice. *Id.* at 223-24.

In concluding that counsel's performance was not deficient under *Strickland*, the state court correctly held that "[d]efense counsel chose a strategy which was reasonable under the circumstances." *Sahadeo*, Ind. No. 01609-2011, at 8, ECF No. 1-7. Recognizing that it would be fruitless to deny all sexual contact between petitioner and his niece "[g]iven the testimony of the

prosecution's witness[es] coupled with the scientific evidence," *see id.*, trial counsel focused his arguments on refuting evidence of penetration in order to acquit his client of the top charge. *See e.g.*, Papaleo Tr. Test. 175-76, 183; S.S. Test. 111-14; Def. Summation 306-309.

Moreover, petitioner fails to establish that his defense was prejudiced by Russo's supposed failures. *See Strickland*, 466 U.S. at 687. Thus, petitioner argues that had trial counsel worked with him to develop trial strategy and a defense leading to suppression of the buccal swab and attacking the arrest, this "would have weakened the People's case" and "each argument would have been more likely to come to fruition." Fed. Habeas Pet. 27. But weakening the case against him and enabling arguments to come to fruition, both in an unspecified manner, does not establish prejudice. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Similarly, even if trial counsel did not effectively advise him on the decision of whether or not to testify, petitioner does not suggest what his testimony might have entailed or how it would have made a meaningful difference to the outcome of the trial. *Cf. Brown*, 124 F.3d at 80-81 (holding that where petitioner identified specific facts to which he would have testified including a well-founded fear of the murder victim's violent temper, he would have still been unable to establish self-defense and thus unable to establish prejudice). Even if petitioner had offered what his testimony would have been, a jury would have been unlikely to credit it where it would have conflicted with other witnesses' statements and "added little weight to his defense." *Rega v. United States*, 263 F.3d 18, 22-26 (2d Cir. 2001). His claims are entirely speculative and conclusory. *See* Fed. Habeas Pet. 27; *see also LeMarco v. United States*, 336 F. Supp. 3d 152, 169 (E.D.N.Y. 2018) (citing *Blumenberg v. United States*, 2009 WL 3459185, at *3 (S.D.N.Y. Oct. 27, 2009)); *Pena v. United States*, 192 F. Supp. 3d 483, 491

(S.D.N.Y. 2016) (citing *Rosario v. Bennett*, 2002 WL 31852827, at *33 (S.D.N.Y. Dec. 20, 2002) (collecting cases)). Petitioner in no way explains how or why "a more favorable outcome" would have been achieved in the face of such overwhelming evidence of guilt – including, *inter alia*, the victim's aunt walking in on petitioner with his shirt off and her naked niece, the victim's testimony directly inculpating petitioner for hurting her when he inserted his penis into her vagina, and a DNA match between semen swabbed from S.S.'s genitalia and petitioner's buccal swab. *See* Sattie Test. 46; S.S. Test. 103; McCasland Test. 251.

## IV.    CONCLUSION

Sahadeo's petition for a writ of habeas corpus is denied. I decline to issue a certificate of appealability.

<b>SO ORDERED.</b>

*Edward R. Korman*

Brooklyn, New York                                     Edward R. Korman
March 14, 2019                                             United States District Judge